IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LESTER HINES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-0367-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability and Supplemental Security Income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff applied for benefits under Title II of the Social Security Act, alleging he was disabled due to a combination of problems with his heart, back and knee. During the hearing, evidence from consulting experts was submitted relating to Plaintiff's mental condition. The ALJ concluded none of Plaintiff's conditions met or equaled a listed impairment, that Plaintiff could not return to his past relevant work, but Plaintiff could perform other work in the national economy. Plaintiff does not raise any arguments about the ALJ's findings with respect to his physical condition; his arguments are limited to the ALJ's determination that Plaintiff's low IQ does not meet or equal a listed impairment. The Court's decision will be similarly limited.

Plaintiff was born in March 1961. No records from treating physicians bear on Plaintiff's IQ, and very little of his testimony addressed the subject. He testified he has problems cooking because he forgets to turn off the burners and on one occasion caused a fire in the kitchen. R. at 40. He could not complete the Social Security forms

on his own because he could not understand them and required his mother's help them. R. at 43-44. However, he occasionally reads *Reader's Digest* during the day. R. at 43.

Plaintiff was examined by two consulting psychologists. On September 27, 2005, Plaintiff saw John Keough. Plaintiff reported being involved in a car accident while in the ninth grade, at which time he dropped out of school. He never obtained his GED. Plaintiff did not indicate any difficulties in school before he dropped out, and denied ever seeking or obtaining treatment for mental health issues. R. at 356. Plaintiff's vocabulary skills were determined to be "quite lacking," and his ability to understand and remember instructions were "mildly impaired by learning disabilities and a history of alcohol abuse. Mr. Hines appears [to] be experiencing a mild to moderate level of impairment with regard to his maintaining concentration, being persistent in tasks, and maintaining an adequate pace in productive activity." R. at 357. The report continues by suggesting various limitations on Plaintiff's functional capacity. R. at 358-61.

On November 2, 2005, Plaintiff was examined by Louis Bein. Plaintiff again related that he attended school through the ninth grade and quit because he required over a year of medical treatment following a car accident. He stated that he received "special assistance in reading and spelling," but nothing elaborates upon this claim. R. at 364. An IQ test resulted in a verbal score of 67, a performance score of 75, and a full scale score of 67. The verbal and full scale scores fall in the mild retardation range. R. at 365. Trail marking scores "suggest organic brain damage. The psychologist concluded Plaintiff's "main weakness is in verbal comprehension. . . . Summarily, Mr. Hines is an individual of limited inner resources who may have experienced some mild cognitive deterioration because of depression, substance abuse and heart disease." R. at 366.

The ALJ concluded Dr. Keough's opinions were entitled to more weight than Dr. Bein's because "Dr. Bein's assessment did not recognize the claimant's prior work history, which included semi-skilled work as a material handler." R. at 19. Based on all of the evidence, the ALJ found Plaintiff's "cognitive deficits are more consistent with a learning disorder as compared to mild mental retardation. . . . Moreover, some of the claimant's mental problems have been caused by alcohol abuse [which] do not help the

2

claimant's case since an individual is precluded from benefits if substance abuse is found to be a factor material to finding that individual is disabled." R. at 21.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff contends he meets or equals the impairment in Listing 12.05C, which requires an "IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05's introductory paragraph states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The introductory paragraph applies to Listing 12.05's subsections, and with respect to Listing 12.05C mandates developmental deficits be manifested before age twenty-two, but does not require a formal diagnosis of retardation. Maresh v. Barnhart, 438 F.3d 897, 899 (2006). The Eighth Circuit summarized 12.05(C)'s requirements as follows: "(1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related

3

limitation of function." Id. In applying the second component, the *Maresh* Court focused on the claimant's functional capacity before age twenty-two and further described its inquiry as one intended to determine whether the claimant "exhibited deficits in adaptive functioning at a young age . . . ." Id. at 900. The Court did not simply rely on the claimant's IQ scores for this component; the IQ scores were relied upon to satisfy the first component only. This analysis makes sense in light of Maresh's holding that the introductory paragraph's requirement that the claimant exhibit "deficits in adaptive functioning initially manifested" before age twenty-two is mandatory. Therefore, a claimant invoking Listing 12.05C must prove *both* (1) the requisite IQ score and (2) deficits in adaptive functioning, and both components must be demonstrated to have existed prior to the claimant's twenty-second birthday. Deficits in adaptive functioning are not presumed simply based on the IQ score; if this showing were sufficient, then there would have been no need for the Maresh court to discuss additional facts surrounding the claimant's functional abilities.

*Maresh* demonstrates the Commissioner's decision is supported by substantial evidence. Even if Plaintiff presently has the requisite IQ scores, nothing indicates those scores reflect Plaintiff's IQ before he turned twenty-two or that Plaintiff suffered from deficits in adaptive functioning before turning twenty-two. To the contrary, the evidence suggests Plaintiff's deficits in functioning are a product of his alcohol abuse and other factors that occurred after he turned twenty-two. Plaintiff did not complete high school or obtain a GED, but the record reflects this was due to his need for medical care following an auto accident and not because of deficits in mental functioning. Plaintiff's declaration that he received "special assistance" in school is too vague and generalized to constitute substantial evidence of deficits in mental functioning.

## III. CONCLUSION

The ALJ determined Plaintiff had not satisfied the requirements of Listing 12.05C that he had the requisite IQ scores and an "other mental impairment imposing an additional and significant work-related limitation of function" before turning age twenty-

4

two. The ALJ's determination is supported by substantial evidence in the Record as whole, so the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

DATE: November 1, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT